and as the uniform practice, since the making that law, has been to take the judgments for sterling debts to the amount thereof in current money, at the rate of 166*l.* 13*s.* 4*d.* currency, for 100*l.* sterling, I therefore apprehend, the judgment in this case should have been so entered, and is therefore erroneous and ought to be reversed.

THE COURT OF APPEALS *affirmed* the judgment of the General Court.

## COURT OF APPEALS, JUNE TERM, 1798.

### LAWRENCE *vs.* DORSEY's Devisee and Executrix.

APPEAL from a decree of the Court of Chancery. The bill states that the complainant, (the present appellant,) having on the 29th of June 1778, purchased of Colonel *Thomas Dorsey* a parcel of land called "*The Resurvey on Cold Friday*," lying in Frederick county, containing 419 acres of land, at and for the sum of 50*s.* per acre, continental money, the said *Dorsey* delivered possession of the land, and entered into an agreement to convey on payment of the purchase money. That the said purchase money had been fully paid. That there was a deficiency in the land sold, &c. That the defendant (the present appellee,) had brought an ejectment at law, and had obtained a judgment for possession of the said land. *Prayer* that the defendant might be compelled by a decree to convey the said land to the complainant in fee simple, &c. and be enjoined from proceeding at law upon the said judgment.

*The answer.*—Admitted that at the time of the agreement aforesaid continental money was the common medium in which transactions and bargains for land were generally made; and that the said *Thomas Dorsey* would have received continental money, she believes, and would have been satisfied with the value of the said continental money at the time of the contract, although the land was worth far more, being always rated by her testator to be worth 30 or 35*s.* specie per acre. That at the time of the said agreement, although the difference between continental money and specie was at the rate of *four for one*, yet it was not so considered in the sales of real property. That the complainant paid to the said *Thomas*, in his lifetime, when continental money was at the rate of *sixty for one*, 1926 continental dollars, and 20 bushels of wheat; which two articles added together, and estimated in specie, amount to 19*l.*

JUNE 1798.

Lawrence,
vs.
Dorsey.

13s. 0d. only; which is the only payment ever made by the complainant on account of the said tract of land. That she did not believe there was a deficiency of land, &c. That she is willing to convey the said land upon the payment of the full purchase money; for that purpose she had executed and tendered a deed, &c.

The following *admissions* were agreed to by the counsel of the parties: "It is admitted that Colonel *Thomas Dorsey* sold, and the complainant purchased of him 404¾ acres of land, for 50s. current money per acre, on the 26th of June 1778, part of a tract of land called "*The Resurvey on Cold Friday*," lying in Frederick county, and which part is admitted to be described on the plot in this cause made out and signed by *Samuel Duvall.*

"It is admitted that the value of the purchase money in specie, on the day of the contract, amounted to 252l. 19s. 4½d. It is further admitted, that the complainant paid the sum of 1153l. 12s. 4d. continental money, on the 2d of March 1780, which was then the value in specie of 19l. 13s. 0d.

"The complainant, by his solicitor, consents that a decree pass on the usual principles of this court, for a conveyance to be made to him on his making good the depreciation.

"And one point is submitted to the court, whether this contract is operated upon by the act of *October* 1780, *ch.* 5; and if so, whether a court of equity will decree the complainant to pay more than *two thirds* of the real value of the money? It is admitted to have been payable the day the contract was entered into, viz. 26th June 1778, and that the complainant has had possession of the land from the time of the contract.

THE 9th section of the act of *October session* 1780, *ch.* 5. is in these words: "That where any debt, covenant, con- "tract, promise or agreement, unless for gold or silver, "or sterling money, or unless the contract was made "and intended to prevent the payment of any of the said "bills, has been created or made between the 1st of "September 1776, and the 20th of April 1779, the deb- "tor, or person bound in such debt, covenant, promise, "contract, or agreement, may, at any time hereafter, "pay or discharge the same in the said new bills of "credit, or the bills emitted by the act of assembly, en- "titled, *An act to enable the treasurer of the western shore* "*to draw and sell bills of exchange, and for an emission of* "*bills of credit if necessary,* by paying in such bills, in the "case of money lent, two thirds of the real value at the "time of the loan, and in case of contracts upon sales "of property, by paying two thirds of the real value of

" the money at the time the same was made payable, so " that the loss of the creditor, and risk of the debtor, "may fall as equally on each as the nature of the case " will admit; and in case of difference between the par- "ties, such value to be ascertained, on application of " either, by persons to be appointed by the county court " where the debtor resides, whose determination shall " be final."—"Provided always, that if any person hath " refused or neglected to pay money lent after a demand " made, or if any person hath broke his contract, by " neglecting to make payment for the property sold at " the time limited, or if any person hath neglected to " pay his debt at the day appointed for payment, and " the time of payment was expressly agreed and under- " stood to be part of the contract (the common case of " passing bonds with a day of payment, in which neither " party considered the day to be part of the contract, " excepted,) and to discover the intention in case of spe- " cialty or otherwise, either party may give indifferent " testimony, or on convenient notice examine the other " on oath, nothing in this act shall prevent the person in- " jured by such breach of contract from suing for and " recovering damages equal to the loss sustained by such " breach, such damages not to exceed the real value of the " money contracted, to be paid at the time of the breach, " with interest, and such damages may be laid and as- " sessed in the new money, and so much thereof given " or recovered as may be equal to the value of the debt " or damages as aforesaid, with interest."

HANSON, Chancellor, (December term, 1796,) Having read and considered the bill, answer and exhibits, toge- ther with the agreement of the parties by their solici- tors, stated, "that it does not appear to him that the act of *October* 1780, *ch. 5, sect.* 9, ought to have any influ- ence in this cause; or that the general assembly, in pre- scribing rules for discharging contracts made in bills of credit between September 1st, 1776, and April 20th, 1779, intended to interfere with the jurisdiction of this court relative to the specific execution of contracts.

"There is no positive law directing this, or any other court, to compel the performance of an agreement in any case whatever. No! not even in the case where one man has made a fair honest bargain with another, for selling him property in consideration of a certain sum of *real* money. The legislature of October 1780, must have been wholly ignorant of the principles which time hath brought forth, and established in this court, or re- gardless of justice, as well as of character, if it had plainly directed, that in every case where a man has

agreed at any time between September 1st, 1776, and April 20th, 1779, for the purchase of property in bills of credit, the chancellor, on his application, shall compel the other party to transfer and convey, on receiving two thirds of the purchase money in the new paper. If their act extends to one case it must extend to all. It points out no distinction between one case and another. There is no reservation, or exception; and whoever has agreed for the purchase of land, or other property, is entitled to a transfer and conveyance of that property, provided he hath not broken his contract, by failing to pay on a certain day, contemplated by the parties, as the fixed day of payment. If then we admit that law to have any influence on the jurisdiction of this court relative to the specific performance of contracts, do we not thereby admit this monstrous, shocking absurdity—that if an agreement be made for the sale of property for any certain sum in specie, this court may compel a performance, or otherwise, according to the circumstance of the case. But if the property was agreed to be sold for bills of credit, which, at best, are only the representative of specie, this court *must* compel a transfer and conveyance, for two thirds of the value, let the circumstances of the case be what they may.

"As this absurdity seems to follow from the construction contended for, there is the strongest reason for believing, that such a construction of the law was not intended by its framers. But had they indeed intended to give the law an operation, against which the sense of mankind, and the principles of this court would revolt, is it not reasonable to suppose they would have taken care to bind the court by such explicit terms as would plainly shew their meaning, and such as the court could not evade? Instead of that, they have not even named the chancery, or the chancellor, or contracts to be enforced in equity.

"Their true meaning appears to be this—If a man has contracted with another for the purchase of property in bills of credit, at any time between September 1, 1776, and April 20, 1779, it shall be a legal discharge of his part of the contract, if he pays in the new bills, the value of two thirds of the sum stipulated; provided he hath not broken his contract by letting pass the day, on which it was the meaning of the parties that the payment should be made; that is to say, no more shall be recovered in a suit at law. This was going far enough in all conscience.

"But supposing it alleged, that, 'although the act extends to cases like the present, the absurdity before mentioned does not necessarily follow; the meaning of the act with respect to cases, where a specific performance

' is sought in chancery, is only this—When the court shall ' be of opinion that a contract, made between the periods ' aforesaid, for the purchase of property, in bills of cre- ' dit, ought to be performed, it shall direct a performance ' on the payment of two thirds of the value of the sum ' agreed for, in the new bills, or in specie.'

"Admitting this construction to be right, it is still left to this court to decide, on a consideration of all circumstances, whether or not the contract shall be enforced; and the chancellor must confess, that if the construction to him seemed just, he would exercise that discretion which the legislature has thought proper to leave him; and he would say, that no case of a contract, for the purchase of property with bills of credit, made between the periods aforesaid, is entitled to the aid of this court. To call any act, which was not at all contemplated by either party at the time of the contract, a specific performance of the agreement, would be an insult to the understanding of any plain honest man accustomed to make bargains.

"Although this court has been often applied to for a decree to enforce paper money contracts, there is not a single instance where it has passed such decree, or rather (to speak more properly,) where it has directed any thing to be done in consequence of an agreement for the purchase of property, unless the defendant had expressed in writing his willingness to convey, on receiving such sum as the chancellor should think right; or unless the circumstances of the case were such as rendered what was decreed to be done essential to the ends of justice. And where this court hath so decreed, it may justly be said, that a compliance with its order was not a specific performance of the contract. *It was doing that, without which, as it appeared to the court, one side would not render justice, and the other side could not receive it.*

"In the present case it appears, that the defendant has no objection against a decree for conveyance, on receiving such sum as the chancellor thinks just. And the chancellor is clearly of opinion, that she ought to receive the whole value of the sum stipulated between the complainant and her testator, deducting the value of the payments stated by the solicitors.

"He has discussed at large the point submitted, because it was never before under his consideration; because he considers it of importance to settle it; and because it has not been argued by the counsel.

"Upon the whole, it is, this 10th day of February, 1797, adjudged," &c. "that if the complainant shall on or at any time before the 10th day of August next. bring into this court, to be paid to the defendant, the sum of

JUNE 1798.

Lawrence
vs.
Dorsey.

516*l*. 0*s*. 3*d*. with interest thereon to the day of bringing in, (the said sum being the amount of the value of the bills of credit, or current money, stipulated by the complainant to be paid to the defendant's devisor and testator, with interest thereon to this day, after deducting the sum of 19*l*. 13*s*. 0*d*. the value of the payments made by the complainant to the said testator as mentioned in the agreement of the solicitors aforesaid,) the said defendant, by a good and effectual deed to be acknowledged, &c. shall give, &c. to the complainant and his heirs, that part of the land sold by *Thomas Dorsey*, deceased, to the complainant, as mentioned in bill, beginning, &c. containing as laid down, with one quarter degree allowance, to correspond with the proofs taken on the survey, 408 1-4 acres clear of known elder surveys, and 404 3-4 acres clear of said surveys, agreeably to the lines surveyed and bounded by stones erected at most of the corners.

" That in case the complainant shall not on or before the said 10th of August next, bring into this court the said sum of money, with interest, to be paid to the defendant, the injunction heretofore issued in this cause shall be dissolved. But in case the complainant shall bring in as aforesaid, the said injunction shall be perpetual.

"That neither of the parties shall bear the costs of the other."

The Complainant appealed to the Court of Appeals.

*Key*, for the appellant.

*Martin*, (Attorney-General,) and *Ridgely*, for the appellee.

THE COURT OF APPEALS at this term, (June 1798,) *affirmed* the decree of the Court of Chancery.

## GENERAL COURT, OCTOBER TERM, 1798.

### MAHONEY *vs*. ASHTON.

THIS was a petition for *freedom*; the petitioner claiming to be descended from *Ann Joice*, a free woman. At October term, 1797, the following *special verdict* was found, to wit:

"We the jury, impannelled and sworn to try the issue in this case, do upon our oath find, that the petitioner, *Charles Mahoney*, is the son of *Nelly*, who was the daughter of Mr. Carroll's *Sue*, who was the daughter of Mr. Digges's *Sue*, who was the daughter of a black woman named *Joice*, formerly held and claimed by Colonel *Henry*